UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, *et al.*; <br><br> Plaintiffs, <br><br> v. <br><br> DAIMLER AG, *et al.*, <br><br> Defendants. | Civ. Action No. 20-2564 (EGS) |

**Memorandum Opinion**

Pending before the Court are the United States' Motion to Enter Consent Decree, ECF No. 7,[1] and the State of California's Motion to Enter California Partial Consent Decree, ECF No. 9. The proposed consent decrees lodged with the Court resolve claims the United States and the California Attorney General's Office, on behalf of the California Air Resources Board ("CARB"), assert against the Defendants Daimler AG and Mercedes-Benz USA, LLC (collectively, "Daimler") for certain violations of California law and the Clean Air Act ("CAA"), 42 U.S.C. §§ 7521 *et seq*. *See* Unopposed Mot. Enter Consent Decree ("Gov't's Mot."), ECF No. 7 at 8; Calif. Mot. Enter Calif. Partial Consent Decree ("Calif. Mot."), ECF No. 9 at 2.

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Upon careful consideration of the motions, the arguments therein, the relevant law, and for the reasons set forth below, the Court **GRANTS** the United States' motion and California's motion.

## I. Background

### A. Factual and Procedural History

On September 14, 2020, the United States filed a complaint against Daimler, alleging four types of violations of the CAA arising from the sale of "more than 250,000 diesel-engine vans and passenger cars in the United States that contain undisclosed auxiliary emission control devices (AECDs) and unlawful 'defeat devices' used to circumvent emissions testing." *See* Gov't's Mot., ECF No. 7 at 9.

With respect to the first type of violation, Section 203(a)(1) of the CAA "prohibits vehicle manufacturers from selling any new motor vehicle in the United States that is not covered by a valid certificate of conformity (COC) issued by the Environmental Protection Agency (EPA)." *Id.* According to the allegations in the government's complaint, Daimler allegedly "failed to disclose numerous AECDs installed in its diesel vehicles when applying for COCs, meaning that the vehicles were not covered by a valid COC issued under EPA's regulations when Daimler sold them to consumers." *Id.* at 9-10. With respect to the second type of violation, Section 203(a)(3)(B) of the CAA

prohibits "knowingly selling or installing a part or component in a vehicle to bypass, defeat, or render inoperative any aspect of the vehicle's emissions control system, unless certain narrow exceptions apply." *Id.* at 10. The complaint alleges that Daimler installed "unlawful defeat devices that cause the vehicles' emissions control systems to perform less effectively during normal driving than they perform while undergoing federal emissions testing." *Id.* With respect to the third type of violation, Section 203(a)(3)(A) of the CAA prohibits "tampering with a vehicle's emissions control system by removing or rendering inoperative a part installed to comply with the CAA." *Id.* The complaint alleges that, by installing undisclosed AECDs and defeat devices in the affected vehicles prior to their sale, Daimler tampered with the vehicles. *Id.* With respect to the fourth type of violation, Section 203(a)(2) of the CAA "requires vehicle manufacturers to provide information required under Section 208 of the CAA, including information that the EPA Administrator requires to determine compliance with the Act." *Id.* at 11. The complaint alleges that Daimler failed to provide information regarding the undisclosed AECDs and defeat devices to the EPA, which the EPA needed to determine whether the company was in compliance with the CAA. *Id.*

On the same day it filed the complaint, the government lodged a consent decree that had been agreed to and signed by

3

all parties. *See* Notice Lodging Consent Decree, ECF No. 2. The government requested that the Court take no action pending publication of the proposed consent decree in the Federal Register and the running of the comment period, stating that it would move for entry of the proposed consent decree as a final order at a later date. *Id.* at 1-2.

Also on September 14, 2020, the California Attorney General's Office, on behalf of CARB, filed a separate eleven-count complaint against Daimler under Civil Action Number 20-cv-2565 ("California Action"). *See* Compl., ECF No. 1, *California v. Daimler AG*, No. 20-cv-2565 (D.D.C. Sept. 14, 2020) (EGS). Similar to the above, the complaint in the California Action alleged that Daimler violated certain provisions of the CAA, the California Health and Safety Code, the California Business and Professions Code, and the California Code of Regulations. *See* Calif. Mot., ECF No. 9 at 2. The complaint alleged, among other things, that the affected diesel vehicles contained undisclosed AECDs and defeat devices, "as well as several unreported, unapproved running changes and field fixes that have resulted in, and continue to result in, increased NOx emissions from each Subject Vehicle in excess of California limits." *Id.* The State of California lodged a partial consent decree on the same day it filed its complaint. Notice Lodging, ECF No. 3, *California v. Daimler AG*, No. 20-cv-2565 (D.D.C. Sept. 14, 2020) (EGS). The

4

State of California indicated that it would submit a motion requesting entry of the proposed partial consent decree at a future date. *Id.* at 2.

The Court thereafter consolidated the California Action with this case pursuant to Federal Rule of Civil Procedure 42(a), *see* Min. Order (Sept. 14, 2020), *California v. Daimler AG*, No. 20-cv-2565 (D.D.C. Sept. 14, 2020) (EGS); and the California Action was terminated on September 23, 2020. On December 17, 2020, the United States filed its motion for an order entering a consent decree ("Consent Decree"),[2] Gov't's Mot., ECF No. 7, and the State of California joined in the United States' motion the same day, *see* Calif.'s Notice Joinder, ECF No. 8. The State of California subsequently filed its motion for an order entering the partial consent decree ("California Partial Consent Decree"). Calif. Mot., ECF No. 9. Daimler does not oppose the motions. *See* Gov't's Mot., ECF No. 7 at 7; Calif. Mot., ECF No. 9 at 1.

---

[2] The government notes that during the notice-and-comment period, the parties discovered typographical errors in the initial proposed consent decree lodged on September 14, 2020. The errors, which did not relate to any of the public comments received, were corrected, but the Consent Decree the parties ask this Court to adopt is otherwise the same. *See* Gov't's Mot., ECF No. 7 at 9 n.1; Calif. Notice Joinder, ECF No. 8 at 1 n.1.

**B. The Consent Decree And The California Partial Consent Decree**

The Consent Decree requires Daimler to:

>   (1) fix its vehicles at no cost to consumers;
>
>   (2) offer an extended warranty on all parts expected to be impacted by the fix;
>
>   (3) conduct future testing of the affected vehicles to demonstrate compliance with emissions standards for their full useful life;
>
>   (4) perform projects to fully mitigate damage caused to the Nation's air;
>
>   (5) implement new corporate compliance measures to discourage future cheating; and
>
>   (6) pay a civil penalty of $875 million, plus retroactive stipulated penalties of about $70.3 million.

Gov't's Mot., ECF No. 7 at 11. The settlement's total value will reach $1.5 billion, according to the government. *Id.*

The government notes that it held a 30-day public comment period on the Consent Decree, received 16 comments which it carefully considered, and concluded that none of the comments provided a basis for withholding its consent to the entry of the decree. *Id.* at 15-16.

The California Partial Consent Decree requires Daimler to make a $110,000,000 payment to CARB and a $17,500,000 payment to the California Attorney General. Calif. Mot., ECF No. 9 at 3-5. The California Partial Consent Decree also resolves: (1) all

civil claims for relief that were or could have been brought under Section 17200 of the California Business & Professions Code "to the extent that those claims are predicated on allegations that Daimler engaged in unlawful business acts or practices," within the meaning of the provision, "by virtue of having violated certain provisions of California and [f]ederal law"; and (2) all claims related to the affected vehicles and the allegations in the California Complaint or "facts disclosed to California before the lodging of the Consent Decree" that the California Attorney General could have brought pursuant to certain provisions of California law and federal law. *Id.* Finally, the California Partial Consent Decree enjoins Daimler from: (1) introducing any vehicles that contain undisclosed AECDs or defeat devices, or that otherwise fail to comply with certain California Health and Safety Code provisions; (2) "engaging in unlawful business acts or practices, within the meaning of California Business and Professions Code § 17200 et seq.," by violating certain California Health and Safety Code provisions; (3) failing to notify relevant authorities if Daimler has reason to believe that a vehicle with an undisclosed AECD or defeat device has been sold or offered for sale; (4) failing to comply with any injunctive terms obtained that apply to the vehicles at issue or Daimler; and (5) submitting "a copy of any report filed under Paragraph 44" of the Consent Decree to

7

the California Attorney General. Ex. 1 to Calif. Mot. ("Calif. Partial Consent Decree"), ECF No. 9-1 at 9-10.

The California Partial Consent Decree was not subject to any notice and comment requirements. Calif. Mot., ECF No. 9 at 1.

## II. Standard for Entry of Consent Decree

The "generally applicable" standard for the review of a consent decree in the District of Columbia Circuit is whether the consent decree "fairly and reasonably resolves the controversy in a manner consistent with the public interest." *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1206 n.1 (D.C. Cir. 2004) (quoting *New York v. Microsoft Corp.*, 231 F. Supp. 2d 203, 205 (D.D.C. 2002)) (citing *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 111, 1126 (D.C. Cir. 1983)). "[P]rior to approving a consent decree a court must satisfy itself of the settlement's overall fairness to beneficiaries and consistency with the public interest." *Citizens for a Better Env't*, 718 F.2d at 1126 (internal quotation marks and citation omitted).

"Approval of a settlement is a judicial act that is committed to the informed discretion of the trial court." *United States v. Hyundai Motor Co.*, 77 F. Supp. 3d 197, 199 (D.D.C. 2015) (quoting *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996)). The Court is not to "substitute its judgment" for that of the parties to the decree and "may not

8

modify but only approve or reject a consent decree." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991). "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971).

"The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claim or controversy, but need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties." *Citizens for a Better Env't*, 718 F.2d at 1126 (citing *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 2014 (7th Cir. 1980)). "[I]t is precisely the desire to avoid a protracted examination of the parties' legal rights which underlies consent decrees. Not only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation. Thus, '[v]oluntary settlement of civil controversies is in high judicial favor.'" *Id.* (quoting *Autera v. Robinson*, 419 F.2d 1197, 1199 (D.C. Cir. 1969)). That said, "[a] decree, even entered as a pretrial settlement, is a judicial act, and therefore the district judge

9

is not obliged to accept one that, on its face and even after government explanation, appears to make a mockery of judicial power." *Microsoft Corp.*, 56 F.3d at 1462. "Finally, broad deference should be afforded to EPA's expertise in determining an appropriate settlement and to the voluntary agreement of the parties in proposing the settlement." *District of Columbia*, 933 F. Supp. at 48 (citing In *re Cuyahoga Equip. Corp.*, 980 F.2d 110, 118 (2d Cir. 1992)).

### III. Analysis

The Court must determine whether the government has met its burden to demonstrate that the consent decrees are fair, reasonable, and in the public interest. *United States v. Davis*, 11 F. Supp. 2d 183, 189 (D.R.I. 1998) ("The United States is obliged to proffer sufficient facts and reasons to establish that these factors have been satisfied and that approval is warranted.").

#### A. The Consent Decrees Are Fair

"A review of the fairness of a proposed consent decree requires an assessment of the good faith of the parties, the opinions of the counsel, and the possible risks involved in litigation if the settlement is not approved." *District of Columbia*, 933 F. Supp. at 48 (quoting *United States v. Hooker Chem. & Plastics Corp.*, 607 F. Supp. 1052, 1057 (W.D.N.Y. 1985)). "Fairness incorporates both procedural and substantive

components." *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994). "An assessment of procedural fairness involves looking 'to the negotiating process and attempt[ing] to gauge its candor, openness, and bargaining balance.'" *District of Columbia*, 933 F. Supp. at 47 (quoting *Telluride Co.*, 849 F. Supp. at 1402). "A consent decree that is substantively fair incorporates 'concepts of corrective justice and accountability: a party should bear the cost of harm for which it is legally responsible.'" *Id.* at 47 (quoting *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 87 (1st Cir. 1990)).

The Consent Decree and the California Partial Consent Decree proposed in this litigation are fair. Regarding the procedural fairness of the consent decrees, all of the parties involved support entry of the decree. *See* Gov't's Mot., ECF No. 7 at 7; Calif. Mot., ECF No. 9 at 1. Each party was represented by experienced counsel and engaged in settlement negotiations that lasted more than three years, resulting in the drafting of, and agreement on, the provisions of the consent decrees. Gov't's Mot., ECF No. 7 at 17. Furthermore, "there is no suggestion of impropriety in the negotiation of the agreement[s]," *Hyundai Motor Corp.*, 77 F. Supp. 3d at 200; rather, the consent decrees are "a reflection of the parties' arms-length efforts to reach a just and equitable outcome," Gov't's Mot., ECF No. 7 at 17. In addition, the United States complied with the CAA's required

11

notice-and-comment procedures and duly considered each of the 16 comments it received. *Id.* Regarding the substantive fairness of the consent decrees, "[t]he proposed settlement requires Daimler to atone for its misconduct" through repairing affected vehicles, mitigating excess NOx emitted into the air, taking steps to prevent future environmental violations, and paying substantial financial penalties. *Id.* at 18; *see also* Calif. Mot., ECF No. 9 at 4.

Accordingly, the Court finds that the consent decrees are fair.

### B. The Consent Decrees Are Reasonable

"In examining the reasonableness of a decree there are three factors for the Court to consider: (1) whether the decree is technically adequate to accomplish the goal of cleaning the environment, (2) whether it will sufficiently compensate the public for the costs of the remedial measures, and (3) whether it reflects the relative strength or weakness of the government's case against the environmental offender." *District of Columbia*, 933 F. Supp. at 50 (quoting *Telluride*, 849 F. Supp. at 1402). "'[T]he court must determine whether the proposed consent decree is reasonable from an objective point of view.'" *Appalachian Voices v. McCarthy*, 38 F. Supp. 3d 52, 56 (D.D.C. 2014) (quoting Env't Def. v. Leavitt, 329 F. Supp. 2d 55, 71 (D.D.C. 2004)).

The United States argues that the first factor has been met because the Consent Decree will force Daimler to: (1) "bring the majority of the affected vehicles into compliance with applicable NOx emission standards"; (2) "perform projects to fully mitigate excess NOx emitted into the air"; and (3) "implement corporate governance reforms to help ensure compliance with the CAA in the future." Gov't's Mot., ECF No. 7 at 19. In addition, the State of California argues that the California Partial Consent Decree is reasonable, noting that the relief provided is "substantial, and it directly addresses the violations alleged by California." Calif. Mot., ECF No. 9 at 3. The Court agrees. Based on the current record, it appears that the consent decrees are "technically adequate to accomplish the goal of cleaning the environment," *District of Columbia*, 933 F. Supp. at 51; will bring Daimler into compliance with the CAA and ensure future compliance with the CAA; and will increase the likelihood that Daimler will meet its obligations going forward.

With regard to "whether [the consent decrees] will sufficiently compensate the public for the costs of remedial measures," *District of Columbia*, 933 F. Supp. at 50; the substantial financial penalties in the Consent Decree and the California Partial Consent Decree were negotiated in good faith taking into account applicable statutory factors, as well as Daimler's cooperation and the risks of litigation. In addition,

13

the penalties are commensurate with other mobile source settlements. *See* Gov't's Mot., ECF No. 7 at 20.

The final factor in the reasonableness inquiry is "whether [the consent decrees] reflect[] the relative strength or weakness of the government's case against the environmental offender." *District of Columbia*, 933 F. Supp. at 50. "While it is true that the [agreements] may have extracted less than was possible from the defendant, it must be remembered that a consent decree by its very nature will contain elements of compromise." *Id.* at 51. Here, the government notes that the settlement "includes compromises," but that it also "includes significant injunctive relief to benefit the Nation's air and the citizens who breathe it and a substantial civil penalty to punish and deter Daimler and would-be violators." Gov't's Mot., ECF No. 7 at 21. Furthermore, the consent decrees provide relief to the parties now, as compared to the potential years of litigation the parties could face if the United States and California elected to pursue their claims to trial. *See District of Columbia*, 933 F. Supp. at 51 ("[I]t is almost axiomatic that voluntary compliance on an issue where there is a potential disagreement is a better alternative than the uncertainty of litigation over that issue.").

Accordingly, for all of these reasons, the Court finds that the consent decrees are reasonable.

### C. The Consent Decrees Are In The Public Interest

"A settlement agreement which seeks to enforce a statute must be consistent with the public objectives sought to be attained by Congress." *Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D.C. 1996). The purpose of the CAA is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). The Court's inquiry is limited. "[P]rior to approving a consent decree a court must satisfy itself of the settlement's 'overall fairness to beneficiaries and consistency with the public interest.'" *United States v. Trucking Emps., Inc.*, 561 F.2d 313, 317 (D.C. Cir. 1977) (quoting *United States v. Allegheny-Ludlum Indus.*, 517 F.2d 826, 850 (5th Cir. 1975)). "'[T]he [district] court's function is not to determine whether the resulting array of rights and liabilities is the one that will *best* serve society, but only to confirm that the resulting settlement is within the *reaches* of the public interest.'" *United States v. Microsoft Corp.*, 563 F.3d 1448, 1460 (D.C. Cir. 1995) (quoting *United States v. W. Elec. Co.*, 900 F.2d 283, 325 (D.C. Cir. 1990)).

The Court is satisfied with the decree's "overall fairness to beneficiaries and consistency with the public interest." *Trucking Emps., Inc.*, 561 F.2d at 317 (citations omitted). As described above, the consent decrees further the goal of the CAA

and California law provisions by "secur[ing] significant injunctive relief to bring the affected vehicles into compliance with the law, mitigate[ing] excess NOx emissions; and promot[ing] compliance in the future." Gov't's Mot., ECF No. 7 at 22; *see also* Calif. Mot., ECF No. 9 at 2 ("The California Partial Consent Decree, along with the US/CARB/Daimler Consent Decree, form an integration resolution to remedy the violations alleged in the California Complaint. The relief provided is substantial, and it directly addresses the violations alleged by California."). The substantial financial penalties provided for in the consent decrees also send a strong deterrence signal to other manufacturers who may consider installing undisclosed AECDs or defeat devices in their vehicles.

Accordingly, for all of these reasons, the Court finds that the consent decrees are in the public interest.

**IV. Conclusion**

For the reasons explained above, the United States' Motion to Enter Consent Decree, ECF No. 7, and the State of California's Motion to Enter California Partial Consent Decree, ECF No. 9, are **GRANTED**. A signed Order entering the Consent Decree and California Partial Consent Decree, as well as the Consent Decree and California Partial Consent Decree, accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**March 9, 2021**